IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **BEECHER REAGAN ADVISORS, LLC** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 4:22-CV-3652 |
| | § | |
| **MATTHEW GREENBERG**, and | § | |
| **EVELAKE, INC.,** | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW, Beecher Reagan Advisors, LLC ("Beecher Reagan"), by its undersigned attorneys, and files this Original Complaint and states the following:

### Introduction

This is a case where an employee lied to his employer for reasons unknown and caused grievous harm. Matthew Greenberg was a promising employee of Beecher Reagan. Beecher Reagan provides retained executive recruiting services to clients across a variety of industries. Mr. Greenberg in October 2021 presented Beecher Reagan with a new contract for Client A. This new contract included a six-figure nonrefundable retainer.

Based on work such as for Client A, Beecher Reagan hired three employees to support Mr. Greenberg's work, costing Beecher Reagan over $400,000.00. In December 2021, Beecher Reagan made Mr. Greenberg a "partner" whereby through ownership under Mr. Greenberg's company (Evelake) he became a Series B member of the Beecher Reagan limited liability company.

In June 2022, Mr. Greenberg allegedly landed multiple retained searches with Client B. Mr. Greenberg produced three contracts with Client B. This included over three hundred thousand dollars in retainers.

In July 2022, Beecher Reagan demanded that Client A pay the retainer. Client A claimed it never executed the contract, never authorized the work, and that communications between Beecher Reagan and Client A were "false and are part of some sort of high tech scam." Beecher Reagan had to abandon its claim for the retainer.

In September 2022, after receiving invoices from Beecher Reagan, Client B reached out to Beecher Reagan. Client B claimed it never executed three contracts, never authorized the placement of three positions, and that Mr. Greenberg directly contacted Accounts Payable with Client B and demanded payment. Accounts Payable inquired of Mr. Greenberg whether he had approval of the business unit to authorize payment. Mr. Greenberg stated he did. However, when the Accounts Payable department asked its own business unit it turned out the work had not been authorized.

In its investigations Beecher Reagan was unable to find emails where Mr. Greenberg ever emailed Client A or Client B any contracts (nor could Mr. Greenberg produce emails). It was also discovered that Mr. Greenberg promised the employees Beecher Reagan hired to support his practice amounts far exceeding their agreed upon pay. When the employees threatened Mr. Greenberg that they were going to Clark Beecher as principal owner of Beecher Reagan, Mr. Greenberg directly paid two of the employees $40,000.00 each without informing Beecher Reagan.

On October 19, 2022, Mr. Greenberg and his company demanded the redemption of his shares in the Limited Liability Company. Beecher Reagan has had enough. It files this lawsuit to recoup its losses from (1) devoting time and effort that was not authorized by its purported clients, (2) the cost of employees Mr. Greenberg demanded, (3) its loss of goodwill and reputation, and (4) the $872,856.50 in ill-gotten gains Mr. Greenberg and his company received since presenting Beecher Reagan with false contracts.

## I.  Parties, Jurisdiction, and Venue

1.  Plaintiff, Beecher Reagan Advisors, LLC, is a limited liability company organized under the laws of the State of Texas. Beecher Reagan's principal office is located at 801 Travis Street, Suite 1600, Houston, Texas 77002

2.  Defendant, Matthew Greenberg is a citizen of the State of Virginia and may be served at 1005 Akan Street SE, Leesburg, Virginia 20175.

3.  Defendant, Evelake, Inc. is a Virginia corporation with a registered office located at 1005 Akan Street SE, Leesburg, VA, 20175. Evelake, Inc. may be served through its principal director Matthew Greenberg at its registered office address.

4.  Subject Matter Jurisdiction in this case is founded on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1).  For purposes of diversity jurisdiction, Plaintiff Beecher Regan Advisors, LLC is a citizen of Texas and California based on the residency of the members of the LLC.  Defendant Evelake, Inc. is a citizen of Virginia, where it is incorporated and maintains its principal place of business.  Defendant Matthew Greenberg is an individual who maintains his residency in Virginia.  The matter in controversy exceeds, exclusive of interest and costs, $75,000.00.

5.  This Court has specific personal jurisdiction over Defendants Evelake, Inc. and Matthew Greenberg.  Defendants purposefully availed themselves to the privilege of conducting activities within the state of Texas by, among other things:

    a.  Negotiating with, and entering into, a Company Agreement with a Texas Limited Liability Company (Beecher Reagan Advisors, LLC) which contemplated a continuous series of contacts within the state of Texas;

    b.  Taking employment positions with, and offering services to, Beecher Reagan Advisors, LLC (a Texas entity) which were to be performed, in whole or in part, within the state of Texas; and

      c.     Sending false communications to Beecher Reagan Advisors, LLC and its members in Texas.

6.     This matter arises out of each and every one of the contacts listed above. Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in the Southern District of Texas because the Southern District of Texas is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated. More specifically, Defendants' breaches of fiduciary duty were directed against a Texas entity and took part largely within the Southern District of Texas. Moreover, Plaintiff seeks a Declaratory Judgment regarding the alleged ownership of property located in the Southern District of Texas, being the 1,250 Series B Membership Units formerly held by Defendant Evelake, Inc.

## II.  Facts

7.     Beecher Reagan provides retained executive recruiting services to clients across a variety of industries. Specifically, Beecher assists clients in locating, recruiting, and hiring candidates for open leadership positions, including top tier executive positions.

8.     Mr. Greenberg joined Beecher Reagan in October 2020 as a Principal.

9.     On or about October 25, 2021, Mr. Greenberg informed Beecher Reagan of new work to be performed for Client A. Purportedly, the Chief Executive Officer of Client A executed a Statement of Work ("SOW") or contract with Beecher Reagan. Beecher Reagan was to "Fill the role of one (1) Partner, Federal Healthcare" in exchange for payment based on a retainer amount and potential commissions earned for candidates accepted. The SOW provided that Beecher would immediately invoice Client A for a retainer at the start of the search in the amount of $224,000.00. The SOW was purportedly executed by the Chief Executive Officer of Client A.

10.    Based on Mr. Greenberg's representations, Beecher Reagan prepared an October 27, 2021 Invoice No. 2453 in the amount of $240,000.00 which included the $224,000.00 retainer

and a charge of $16,000.00 for a Leadership Assessment. As a result, Beecher Reagan directed its employees to work on this work for Client A.

11.     Due to the needs of Mr. Greenberg and his allegedly expanding work, Beecher Reagan hired three people for approximately $400,000.00 in compensation.

12.     Due to his alleged success at Beecher Reagan, Mr. Greenberg was invited to become a Series B Member of the Limited Liability Company in December 2021. Mr. Greenberg did so on January 1, 2022.

13.     Mr. Greenberg and his company, Evelake, executed the Third Amended and Restated Company Agreement of Beecher Reagan Advisors, LLC ("Company Agreement"). Thus, Evelake became a Series B member and Mr. Greenberg is the owner of the Series B member. The Company Agreement provides in relevant part:

> "*For Cause*," means, with respect to a Member's duties as an employee of the Company:
>
>          (a)     any willful act or acts of fraud, embezzlement, misappropriation, dishonesty or disloyalty, which could adversely affect or has adversely affected Company;
>
>          (b)     failure or willful or deliberate refusal to follow requests, instructions, policies, rules, code of conduct, or procedures of Company after receiving written notice of such failure;
>
>          (c)     any willful misconduct in the performance of such person's duties and obligations to Company;
>
>          (d)     breach of fiduciary duty or duty of loyalty to Company;
>
>          (e)     any attempt to secure any personal profit or benefit not fully disclosed to and approved by Company in connection with any transaction entered into on behalf of Company; or
>
>          (f)     Member's conviction of any criminal act that is a felony or that is a crime involving moral turpitude or any violation of federal or state securities laws (by plea of nolo contendere, guilty or otherwise).

14.4    **Termination of Employment of Series B Member**.  If any Series B Member (or owner of a Series B Member) is also an employee of the Company, and such person's employment is terminated, then (i) if employment was terminated For Cause, then such Series B Member shall forfeit its Series B Membership Interest without further compensation; and (ii) if employment was terminated either voluntarily or other than For

"*Confidential Information*" means any information, knowledge or data of any nature and in any form (including information that is electronically transmitted or stored on any form of magnetic or electronic storage media) relating to the past, current or prospective business operations of the Company that is not generally known or readily ascertainable to the public or persons engaged in businesses similar to those conducted or contemplated by Company, whether produced by Company or any of its employees, consultants, agents, contractors or independent contractors, and whether or not marked confidential, including, without limitation:

7.3    **Treatment Upon Separation**.  Member agrees that upon separation from Company (for any reason, whether termination For Cause or voluntary resignation, termination without cause, or separation (collectively "*Separation*"), Member (i) promptly will return (and not retain any copies, notes or abstracts of) any and all Company information or property, including all Confidential Information in Member's possession to Company (whether in electronic or hard copy form), including any duplicates thereof and any notes or other records Member prepared in connection with such Confidential Information; and (ii) will not use, access, communicate, disclose or make available to any person or entity any Confidential Information, except upon the prior written authorization of Company or as may be required by law or legal process.

14.    On June 22, 2022, Mr. Greenberg presented Beecher Reagan with three SOWs with Client B allegedly executed on June 21, 2022, for a Global Vice President of Financial Services, a Vice President of Data Engineering, and a Vice President of Experience Engineering. Mr. Greenberg presented these SOWs to Beecher Reagan.

15.    As a result, starting on June 21, 2022, Beecher Reagan directed its employees to work on the matters for Client B. Beecher Reagan also sent the following invoices:

| Invoice Number | Date | Amount |
| --- | --- | --- |
| 3618 | 6/21/2022 | $45,500.00 ($35,000.00 Retainer #1 for GVP Financial Services and $10,500.00 Admin Fee) |
| 3619 | 7/21/2022 | $35,000.00 Retainer #2 for GVP Financial Services |
| 3620 | 8/19/2022 | $35,000.00 Retainer #3 for GVP Financial Services |

| 3632 | 7/5/2022 | $45,500.00 ($35,000.00 Retainer #1 for GVP Customer Engineering and $10,500.00 Admin Fee) |
| 3633 | 8/5/2022 | $35,000.00 Retainer #2 for GVP Customer Engineering |
| 3634 | 9/2/2022 | $35,000.00 Retainer #3 for GVP Customer Engineering |
| 3621 | 6/21/2022 | $45,500.00 ($35,000.00 Retainer #1 for VP Data Engineering and $10,500.00 Admin Fee) |
| 3622 | 7/21/2022 | $35,000.00 Retainer #2 for VP Data Engineering |
| 3623 | 8/19/2022 | $35,000.00 Retainer #3 for VP Data Engineering |

16.    Mr. Greenberg represented that the retainer for Client A was earned and that Client A was not engaging in the search. On July 14, 2022, Beecher Reagan demanded that Client A pay the October 27, 2021 Invoice No. 2453 in the amount of $240,000.00.

17.    After producing being provided with text messages and emails purportedly between Client A and Beecher Reagan, the attorney for Client A wrote on August 10, 2022:

- "Our investigation has confirmed that neither [Client A], nor [its CEO who purportedly executed the SOW or owner] have ever corresponded with, let alone engaged, Beecher [Reagan] in connection with any executive search assessment or otherwise."

- "Neither [Client A] nor [its CEO] were aware of any of these matters until the receipt of [Beecher Reagan's] letter."

- After reviewing the text messages and emails "it is obvious that the messages in question did not involve or originate from anyone at [Client A]. Neither the email address nor phone number allegedly used by [Client A's CEO] to correspond with Beecher [Reagan] actually belong to [the CEO]."

- "It is clear to us that these communications are false and are part of some sort of high tech scam, the origin and perpetrators of which are unclear to us at this time."

18.    Based on the August 10, 2022, correspondence from Client A, Beecher Reagan began an investigation. Beecher Reagan also withdrew the $240,000.00 invoice to Client A.

19.     During the investigation, Client B reached out to Beecher Reagan. On September 21, 2022, Beecher Reagan representative Matthew Priest had a conversation with a representative of Client B. During the call, Client B claimed:

- The three SOWs with were not executed by Client B.

- Client B had no record of authorizing this work.

- The person who allegedly executed them recently returned from leave and did not authorize the work.

- The SOWs were not reviewed by Client B's legal team which reviews all such contracts.

- Mr. Greenberg directly contacted Accounts Payable with Client B and demanded payment. Accounts Payable inquired of Mr. Greenberg whether he had approval of the business unit to authorize payment. Mr. Greenberg stated he did. However, when the Accounts Payable department asked its own business unit it turned out the work had not been authorized.

- Client B demanded the withdrawal of $346,500.00 in invoices for work it did not authorize.

20.     Beecher Reagan investigated Mr. Greenberg's emails and discovered that he never forwarded SOWs to either Client A or Client B from his Beecher Reagan email account. In fact, Mr. Greenberg never forwarded the SOWs at issue to anyone.

21.     Beecher Reagan also discovered that Mr. Greenberg did not receive executed SOWs from Client A or Client B on his Beecher Reagan email account.

22.     On September 30, 2022, Beecher Reagan gave Mr. Greenberg an opportunity to explain his actions. Beecher Reagan specifically requested Mr. Greenberg produce the emails

8

where Client A or Client B emailed executed SOWs. When he failed to do so Beecher Reagan terminated Mr. Greenberg For Cause as defined in the Company Agreement.

23.     On October 4, 2022, Beecher Reagan withdrew $346,500.00 in invoices from Client B.

24.     In further investigation, Beecher Reagan discovered that Mr. Greenberg promised the employees Beecher Reagan hired to support his practice amounts far exceeding their agreed upon pay. When the employees threatened Mr. Greenberg that they were going to Clark Beecher as principal owner of Beecher Reagan, Mr. Greenberg directly paid two of the employees $40,000.00 each.

25.     Also, in further investigation, Beecher Reagan discovered that some work performed by Beecher Reagan employees for Client C that was invoiced by Beecher Reagan was similarly not authorized by Client C.

26.     On October 19, 2022, Mr. Greenberg demanded $800,000.00 from Beecher Reagan and a redemption of his units under the Company Agreement.

27.     Additionally, on October 19, 2022, Mr. Greenberg produced a copy of an executed contract between Beecher Reagan and Company C. This confirmed that Mr. Greenberg and Evelake did not upon separation promptly return Confidential Information as defined in the Company Agreement.

### Cause of Action No. 1 - Fraud/Fraudulent Inducement against Defendants

28.     Beecher Reagan repeats and re-asserts the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

29.     Mr. Greenberg made representations regarding executed SOWs that were material and fraudulent. As noted above in the Facts section, from October 2021 through September 2022,

Mr. Greenberg made representations to Clark Beecher, Tim Reagan, Matthew Priest, and other Beecher Reagan employees regarding work received. These representations include:

      a.     Beecher Reagan was hired by Client A and required Beecher Reagan employees to devote time and effort to conduct a search for Client A.

      b.     Beecher Reagan should invoice Client A for a retainer for its work.

      c.     The work level of Mr. Greenberg at Beecher Reagan necessitated Beecher Reagan to hire three separate employees to support his work.

      d.     Beecher Reagan was hired by Client B for three separate searches and required Beecher Reagan employees to devote time and effort to conduct searches for Client B.

30.     Mr. Greenberg's representations about authorized work were false in at least the following ways:

      a.     Client A did not execute a SOW.

      b.     Client A did not authorize work with Beecher Reagan.

      c.     Client B did not execute three SOWs.

      d.     Client B did not authorize work on three SOWs with Beecher Reagan.

31.     Mr. Greenberg made these statements regarding work received from Client A and Client B with knowledge that the statements were false or with utter disregard or recklessness regarding whether the statements were false.

32.     Mr. Greenberg made these statements with the intent to mislead Beecher Reagan into relying on these statements. Beecher Reagan did so by making Mr. Greenberg through his company a Series B Member in Beecher Reagan. Beecher Reagan further did so by hiring three employees to support Mr. Greenberg's work. Further, since October 27, 2021, Beecher Reagan

paid Mr. Greenberg $471,309.00 and his company Evelake $401,547.50. Beecher Reagan also paid benefits starting in 2022 for Mr. Greenberg as well.

33.     Given Mr. Greenberg's standing in the industry, coupled with the efforts Mr. Greenberg made on behalf of Beecher Reagan, Beecher Reagan's reliance on Mr. Greenberg's representations regarding the work for Clients A and B was justifiable.

34.     Beecher Reagan has been and continues to be injured as a result of Mr. Greenberg's false statements.

**Cause of Action No. 2 – Negligent Misrepresentation against Defendants**

35.     Beecher Reagan repeats and re-asserts the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

36.     One who, in the course of his business profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transaction is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communication the information.

37.     In the course of Mr. Greenberg's business, and in a transaction in which he had a pecuniary interest, Mr. Greenberg supplied false information for the guidance of Beecher Reagan. These representations included (without limitation):

    a.     Beecher Reagan was hired by Client A and required Beecher Reagan employees to devote time and effort to conduct a search for Client A.

    b.     Beecher Reagan should invoice Client A for a retainer for its work.

    c.     The work level of Mr. Greenberg at Beecher Reagan necessitated Beecher Reagan to hire three separate employees to support his work.

d.      Beecher Reagan was hired by Client B for three separate searches and required Beecher Reagan employees to devote time and effort to conduct searches for Client B.

38.     Mr. Greenberg failed to exercise reasonable care in at least the following ways:

a.      Client A did not execute a SOW.

b.      Client A did not authorize work with Beecher Reagan.

c.      Client B did not execute three SOWs.

d.      Client B did not authorize work on three SOWs with Beecher Reagan.

39.     Given Mr. Greenberg's standing in the industry, coupled with the efforts Mr. Greenberg made on behalf of Beecher Reagan, Beecher Reagan's reliance on Mr. Greenberg's representations regarding the work for Clients A and B was justifiable.

40.     Beecher Reagan has been injured as a result of Mr. Greenberg's false statements.

**Cause of Action No. 3 –Breach of Fiduciary Duty against Defendants**

41.     Beecher Reagan repeats and re-asserts the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

42.     A relationship of trust and confidence existed between Mr. Greenberg and Evelake on one hand and Beecher Reagan on the other as a result of Mr. Greenberg's position with Beecher Reagan, Evelake's position as a Series B member, and Mr. Greenberg's position as owner of a Series B member.

43.     As a result of those relationships Mr. Greenberg and Evelake were obligated to uphold the following fiduciary duties:

a.      Duty of loyalty and utmost good faith.

b.      Duty of candor.

c.     Duty to refrain from self-dealing.

d.     Duty to act with integrity of the strictest kind.

e.     Duty of fair, honest dealing; and the

f.     Duty of full disclosure.

44.     Mr. Greenberg breached the fiduciary relationship and the above enumerated fiduciary duties by making false statements concerning his work, false statements to employees concerning their compensation, and the need for support of his work.  Mr. Greenberg separately breached his fiduciary relationship by not returning confidential information of Beecher Reagan upon separation of his employment. As a result of such breaches, Beecher Reagan incurred damages and hereby seeks to recover same in the form of lost profits, out-of-pocket losses, and disgorgement of profits, salary and distributions.

**Cause of Action No. 4 – Breach of Contract against Evelake**

45.     Beecher Reagan repeats and re-asserts the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

46.     Evelake entered into the Company Agreement described in this Complaint, which agreement Beecher Reagan has fully performed or been excused from performing. All conditions precedent have been performed or have occurred.

47.     Evelake has materially breached the Agreement with Beecher Reagan by failing to promptly return all Confidential Information.

48.     Through these breaches, Evelake has proximately caused harm to Beecher Regan.

49.     Beecher Reagan asks that Evelake be enjoined from breaching the Company Agreement.

50.     Beecher Reagan further asks that Evelake be ordered to pay all actual and consequential damages resulting from its wrongful conduct, including but not limited to lost profits and goodwill, and to disgorge all profits obtained thereby.

51.     Beecher Reagan further asks for its costs and expenses, including reasonable attorneys' fees, to the full extent allowed under applicable law.

**Cause of Action No. 5 – Declaratory Judgment against Defendants**

52.     Beecher Reagan repeats and re-asserts the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

53.     There is an actual controversy between Beecher Reagan and the Defendants as to whether Evelake is entitled to a redemption of its units under the Company Agreement.

54.     Mr. Greenberg and by extension Evelake claim a redemption of units despite the Company Agreement unambiguously stating as follows:

> "*For Cause*," means, with respect to a Member's duties as an employee of the Company:
>
> (a)     any willful act or acts of fraud, embezzlement, misappropriation, dishonesty or disloyalty, which could adversely affect or has adversely affected Company;
>
> (b)     failure or willful or deliberate refusal to follow requests, instructions, policies, rules, code of conduct, or procedures of Company after receiving written notice of such failure;
>
> (c)     any willful misconduct in the performance of such person's duties and obligations to Company;
>
> (d)     breach of fiduciary duty or duty of loyalty to Company;
>
> (e)     any attempt to secure any personal profit or benefit not fully disclosed to and approved by Company in connection with any transaction entered into on behalf of Company; or
>
> (f)     Member's conviction of any criminal act that is a felony or that is a crime involving moral turpitude or any violation of federal or state securities laws (by plea of nolo contendere, guilty or otherwise).

14.4   **Termination of Employment of Series B Member**.  If any Series B Member (or owner of a Series B Member) is also an employee of the Company, and such person's employment is terminated, then (i) if employment was terminated For Cause, then such Series B Member shall forfeit its Series B Membership Interest without further compensation; and (ii) if employment was terminated either voluntarily or other than For

55.     Mr. Greenberg as an owner of Series B Member Evelake was terminated For Cause.

56.     Accordingly, Beecher Reagan is entitled to a declaration by this Court that Evelake is not entitled to a redemption of its units.

**Vicarious Liability**

57.     Beecher Reagan repeats and re-asserts the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

58.     At all relevant times, on information and belief, Mr. Greenberg acted at the direction of and with authority from Evelake.  The conduct of Mr. Greenberg as described in this pleading occurred in the course and scope of business of Evelake.  As such, Evelake is liable for the actions and conduct of Mr. Greenberg under the doctrines of vicarious liability and respondent superior.

**Temporary Injunction and Permanent Injunction.**

59.     Beecher Reagan repeats and re-asserts the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

60.     As a direct and proximate result of Defendants' conduct as described above, Beecher Reagan has suffered irreparable harm through the actual and continued loss of the secrecy of its protected information. The corrosive effect of Defendants' possession and disclosure of the protected information gained during Mr. Greenberg's employment with Beecher Reagan, if permitted to continue, will cause lasting damage to Beecher Reagan's relationships and business that can never be repaired.

15

61.     Beecher Reagan has no adequate remedy at law and is suffering immediate, imminent, irreparable harm. The total loss to Beecher Reagan of its sales, profits, and the value of its protected information cannot be accurately calculated, and any relief that this Court could award would not adequately remedy the injury to Beecher Reagan. Should Defendants' actions continue unabated, Defendants will have effectively destroyed the secrecy of Beecher Reagan's protected information and, thus, Beecher Reagan's business and goodwill.

62.     Beecher Reagan enjoys a substantial likelihood that it will prevail on the merits of its claims and a probable right to relief. The equities in this matter weigh heavily in favor of Beecher Reagan and the issuance of a Temporary Injunction and Permanent Injunction. Further, the magnitude of the injury being suffered due to Defendants' unlawful conduct heavily outweighs whatever hardship Defendants could allege or prove from being restrained as requested below, and the granting of injunctive relief herein would not adversely affect public policy or public interest.

63.     As Defendants have no right to legally possess, disclose, or use Beecher Reagan's protected information for any reason, Defendants will not be harmed by issuance of an injunction, and justice and equity warrants the waiving of a bond. Beecher Reagan, however, is willing to post a bond in support of the injunctive relief sought.

64.     Given the foregoing, Beecher Regan requests a Temporary Injunction against Defendants and their agents, servants, employees, independent contractors, attorneys, representatives, and those persons in active concert or participation with Defendants that receive actual notice of the order by personal service or otherwise from further engaging in certain proscribed activities, as set forth below:

a.     Using or disclosing in any manner any confidential or proprietary information obtained from, or by any association with, Beecher Reagan,

including, but not limited to information regarding Beecher Reagan's products, customers, sales, pricing, or customer accounts, products, or needs; and

b.    Using Beecher Reagan's confidential or proprietary information to solicit or encourage any person, firm, corporation or other business entity that is a client, business associate or referral source of Beecher Reagan to cease doing business with Beecher Reagan or to do business with Defendants.

65.    Beecher Reagan further seeks a Permanent Injunction against Defendants, their agents, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise from further engaging in the proscribed activities set forth above and to force Defendants to return to Beecher Reagan its protected information and any and all copies or duplicates of the same and to fully account for Defendants' use of the information since before and after Mr. Greenberg left his employment with Beecher Reagan.

### Actual and Punitive/Exemplary Damages

66.    Beecher Reagan repeats and re-asserts the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

67.    In addition to injunctive relief, Beecher Reagan seeks recovery of all actual damages it has suffered as a result of the actions of Defendants.

68.    Further, due to the knowing and willful commission of tortious acts as outlined above, Defendants have demonstrated specific intent to cause substantial injury or harm to Beecher Reagan.  As such, Beecher Reagan requests exemplary damages for all causes of action for which exemplary damages are available pursuant to TEX. CIV. PRAC. & REM. CODE § 41.001 et seq. and other applicable Texas Law.

17

## Attorneys Fees

69.     Beecher Reagan repeats and re-asserts the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

70.     Beecher Reagan is entitled to recover its reasonable and necessary attorneys' fees. It has become necessary for Beecher Reagan to employ the legal assistance of Bradley to file this suit on its behalf. Beecher Reagan presented its claim on October 21, 2022. Beecher Reagan therefore sues Defendants for its reasonable and necessary attorneys' fees, including the Court's approval of additional attorneys' fees in the event of an appeal.

## Conditions Precedent

71.     All conditions precedent to Beecher Reagan's claim for relief have been performed or have occurred.

## Jury Demand

72.     Plaintiff demands a jury trial on all issues so triable.

## Prayer for Relief

WHEREFORE PREMISES CONSIDERED, Plaintiff, Beecher Reagan Advisors, LLC, prays that Defendants, Matthew Greenberg and Evelake Inc., be cited to appear and file an answer herein, and on final hearing hereof:

(a)     Plaintiff have and recover from Defendant actual damages together with pre- and post-judgment interest as allowed by law;

(b)     Defendants disgorge all profits, salary and distributions received since their first violation of a breach of fiduciary duty;

(c)     A declaration that Evelake, Inc. is not entitled to a redemption of its units.

(d)     Plaintiff receive temporary and permanent relief;

(e)     Plaintiff recover punitive and exemplary damages;

(f)     Plaintiff recover its reasonable attorneys' fees and all costs of Court;

(g)     Plaintiff recover such other and further relief to which it may show itself to be justly

entitled.

Respectfully submitted,

BRADLEY ARANT BOULT CUMMINGS LLP

*/s/ James A. Collura, Jr.*
James A. Collura, Jr.
Texas Bar No. 240445023
jcollura@bradley.com
Charles L. Sharman
Texas Bar No. 24098414
csharman@bradley.com
600 Travis, Suite 4800
Houston, Texas 77002
Telephone: 713-576-0300
Facsimile: 713-576-0301

ATTORNEYS FOR PLAINTIFF